## STATE OF NORTH DAKOTA v. C. H. STEVENS.

(157 N. W. 668.)

**Criminal information — public decency — openly outraging — charge of — public morals — demurrer — facts insufficient.**

1. To a criminal information attempting to charge facts sufficient to constitute the crime of openly outraging public decency and injuring public morals, under § 10250, Comp. Laws 1913, a demurrer was interposed and overruled. After conviction, defendant appeals. *Held:* The demurrer should have been sustained, as the facts stated in the information are insufficient to constitute the crime attempted to be charged.

**Statute — prosecution under — other crime — Penal Code.**

2. Prosecution under said statute must be for acts constituting no other crime defined by the Penal Code.

**Words — "openly" used in statute — public decency — crime — commission of.**

3. The word "openly" as used in said statute, requiring that to be prosecuted thereunder the acts must "openly outrage public decency," is a part of the statutory definition, and to constitute said crime the act must be openly done, instead of secretly with the public excluded from observing it.

Opinion filed March 30, 1916.

From a judgment of the District Court of Traill County, *Pollock,* J. Defendant appeals.

Reversed.

*John Carmody* and *C. E. Leslie,* for appellant.

The statute defines no crime, nor has the legislature created thereby any crime; the statute is void because it delegates legislative powers to the court or to the jury.

It is well settled that the functions of government must be kept separate, and the delegation by the legislature of its powers to other departments of government has always been held unconstitutional. Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023; State ex rel. Rusk v. Budge, 14 N. D. 532, 105 N. W. 724; State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089; McCrowell v. Bristol, 89 Va. 652, 20 L.R.A. 653, 16 S. E. 867; State ex rel. Miller v. Taylor, 27 N. D. 77, 145 N. W. 425.

The statute is void for uncertainty. A statute or other law that does not definitely state what acts are prohibited is void for uncertainty. Kreulhaus v. Birmingham, 164 Ala. 623, 26 L.R.A.(N.S.) 492, 51 So. 297; Czarra v. Medical Supers. 25 App. D. C. 443; Johnson v. State, 4 Tex. App. 63.

The statute is in effect an *ex post facto* law of dangerous type, since it is also so indefinite and elastic, and because it leaves to the same body—the court and jury—the power to create the crime. Johnson v. State, supra; 8 Cyc. 1027, and cases cited; Ex parte Jackson, 45 Ark. 158.

But, if the statute is upheld, the conviction of the defendant must still be set aside and the judgment reversed, for the evidence does not

prove acts for which he can be convicted under the information. The acts must be done openly, and not in secret, or where the public is excluded. Comp. Laws 1913, § 10250.

*Chas. A. Lyche,* State's Attorney, for respondent.

There is no delegation of legislative powers to the courts, or to juries, in the statute in question.

The test is whether the language may apply not only to a particular act about which there can be little or no doubt or difference of opinion, but equally to others about which there may be radical differences. Czarra v. Medical Supers. 25 App. D. C. 443.

The law presupposes and presumes a uniform standard of morality and decency throughout our state. The act, in order to constitute a violation of the statute, must be "wilful." The word "wilful" means "with a bad purpose." Potter v. United States, 155 U. S. 438, 39 L. ed. 214, 15 Sup. Ct. Rep. 144; Com. v. Kneeland, 20 Pick. 206; Williams v. People, 26 Colo. 272, 57 Pac. 701; State v. Alcorn, 78 Tex. 387, 14 S. W. 663; Parsons v. Smilie, 97 Cal. 655, 32 Pac. 702; Richardson v. State, 5 Tex. App. 472; United States v. Three Railroad Cars, 1 Abb. (U. S.) 196, Fed. Cas. No. 16,513; Black's Law Dict. 1242; King v. State, 103 Ga. 263, 30 S. E. 30; Huff v. Chicago, I. & L. R. Co. 24 Ind. App. 492, 79 Am. St. Rep. 274, 59 N. E. 932; Dull v. Cleveland, C. C. & St. L. R. Co. 21 Ind. App. 571, 52 N. E. 1013; Miller v. Miller, 17 Ind. App. 605, 47 N. E. 338, 3 Am. Neg. Rep. 372.

The word "wilful" when used in a penal statute to characterize the forbidden act means evil intent or legal malice, or "without reasonable grounds to believe the act to be lawful." Trice v. State, 17 Tex. App. 43; Rose v. State, 19 Tex. App. 470; Shubert v. State, 16 Tex. App. 645; Thomas v. State, 14 Tex. App. 200; Lane v. State, 16 Tex. App. 172; Savage v. Tullar, Brayton (Vt.) 223; State v. Clark, 29 N. J. L. 98; State v. Preston, 34 Wis. 675; King v. State, 103 Ga. 263, 30 S. E. 30; Cornelison v. State, 40 Tex. Crim. Rep. 159, 49 S. W. 384; High v. State, 26 Tex. App. 545, 8 Am. St. Rep. 488, 10 S. W. 238; Mills v. Glennon, 2 Idaho, 105, 6 Pac. 116; Bowers v. State, 24 Tex. App. 542, 5 Am. St. Rep. 901, 7 S. W. 247; Ferguson v. State, 36 Tex. Crim. Rep. 60, 35 S. W. 369.

The word "wrongful" means "contrary to justice and fairness."

Websters New Int. Dict.; New National Dict. Enc.; Riddell v. Peck-Williamson Heating & Ventilating Co. 27 Mont. 44, 69 Pac. 241; O'Connor v. Dils, 43 W. Va. 54, 26 S. E. 354; People v. Quanstrom, 93 Mich. 254, 17 L.R.A. 723, 53 N. W. 165; Cullinan v. Burkhard, 41 Misc. 321, 84 N. Y. Supp. 825; McDonald v. Brown, 23 R. I. 546, 58 L.R.A. 768, 91 Am. St. Rep. 659, 51 Atl. 213; Re Long, 39 N. Y. S. R. 892, 15 N. Y. Supp. 657.

"Openly outrages," means to do an act in the open; plainly, publicly, obviously, and in a violent, furious, atrocious, heinous, abusive manner. Webster's New Int. Dict.; Mosnat v. Snyder, 105 Iowa, 500, 75 N. W. 356.

"Public decency" are words with a meaning so well understood and legally defined that there can be no question about them when found in a statute. Webster's New Int. Dict.; Comp. Laws 1913, § 9742; People v. Most, 36 Misc. 139, 73 N. Y. Supp. 220; Penal Code, § 675.

It is true that the legislative powers must not be delegated to other branches or departments of government. But, as to the statute in question, appellant's contention has no merit. It is wholly unlike any of the statutes or ordinances mentioned in the cases cited by appellant. Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023; State ex rel. Rusk v. Budge, 14 N. D. 532, 105 N. W. 724; State ex rel. Miller v. Taylor, 27 N. D. 77, 145 N. W. 425; McCrowell v. Bristol, 89 Va. 652, 20 L.R.A. 653, 16 S. E. 867; Chrisman v. Jackson, 84 Miss. 787, 37 So. 1015; Oakland v. Miller, 90 Miss. 275, 43 So. 467.

Assignments of error and exceptions will be deemed waived and abandoned unless presented to the court by brief and argument. Ashley v. Sioux City, — Iowa, —, 93 N. W. 303; Little Dorrit Gold Min. Co. v. Arapahoe Gold Min. Co. 30 Colo. 431, 71 Pac. 389; Schmidt v. Beiseker, 19 N. D. 35, 120 N. W. 1096; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Old Rule, XIV, 10 N. D. XLVI, 91 N. W. VIII; New Rule, No. 34, Rules of Sup. Ct.

Goss, J. A demurrer was overruled interposed to the following criminal information, omitting formal heading, viz.:

"Heretofore, to wit: On the 18th day of July, 1915, at the county of Traill in said state of North Dakota, one C. H. Stevens did commit the crime of wilfully and unlawfully committing an act which openly

outraged public decency and was injurious to public morals, committed as follows, to wit:

"That at said time and place the said defendant, C. H. Stevens, did wilfully and unlawfully entice and procure one Florence Stenmo, then and there a married woman the wife of one Martin Stenmo, and with him then and there living as husband and wife, to go with him, the said defendant, into a certain so-called Pool Hall, situated upon lot 22 in block 30, of the original townsite of Hatton, Traill county, North Dakota, as per the official plat thereof on file and of record in the office of the register of deeds of said county, at or about the hour of 4 o'clock in the afternoon of said day, which was Sunday, and on which day said Pool Hall was closed to the public, by virtue of the law in such case made and provided, and there remained with her alone until after the hour of 11 o'clock in the afternoon of said day, he the said defendant being then and there himself a married man, and so remained with said Florence Stenmo behind locked and barred doors and blinded windows, in the presence of a large crowd of people until said hour, thus openly outraging public decency and injuring public morals;

"This contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of North Dakota.

"Dated at Hillsboro, North Dakota, this 28th day of July, A. D. 1915."

The question presented on the demurrer is whether the facts stated constitute the crime charged. The demurrer should have been sustained. Whether the information charges a crime under the statute depends not upon acts charged, but upon inferences not charged but possible to be drawn from certain facts stated. It is entirely possible for said facts stated to have occurred and yet defendant be not guilty of the crime inferred by the jury. The facts charged are that a married man and a married woman, not husband and wife, remained within said closed building with blinded windows from 4 until 11 o'clock that Sunday afternoon. This statement lacks as much of certainty in charging the commission of this crime as it would in thus attempting to charge instead the commission of the crime of adultery, or of the crime of unlawful cohabitation, or of fornication or of sodomy, or of

maintaining a house of prostitution, or possibly any other sexual crime. Unaided by uncertain inference, no crime is charged. That the kind of inferences to be drawn could make the acts charged so supplemented, any one of several crimes according to the uncertain inference is in itself sufficient to condemn as vulnerable to demurrer the information which constitutes a shotgun charge at some one of several crimes possibly charged according to the inferences used to supplement the few facts actually alleged. Defendant could have stated that he committed all the acts charged and yet plead not guilty, a condition rather anomalous in criminal pleading and procedure as would forcefully appear had the charge been larceny, and had the defendant admitted every fact charged in the information but still pleaded not guilty. And an examination of the proof discloses that this defendant was convicted accordingly, not upon what was charged in the information to have occurred, but instead upon facts or inferences of fact not therein charged but which the jury inferred, and the court likewise must have assumed happened as either the result of or the reason for these two persons remaining behind closed doors during that time. The court evidently realized that there was something necessary to convict this defendant besides mere proof of the facts charged in the information; otherwise the following instruction would not have been given: "There is foreshadowed in that charge (after reading the information) a clear violation of sex relation such as ought not to exist between a man married and a woman married. Referring to this charge particularly, it does not necessarily charge that adultery was committed, but it does charge an improper sex relation, and that is the question for you to answer when you go to your jury room,—Did the defendant take this woman there for that purpose? He has gone upon the witness stand and given you an explanation of why he was there. His explanation is that which would be consistent with an honest purpose, and if you believe that his explanation is sufficient" defendant should be acquitted, but if "the state has shown you by evidence beyond a reasonable doubt that his purpose was an unlawful purpose, and if you believe by evidence beyond a reasonable doubt that the purpose was a wrong purpose, then he would be guilty as charged." "Ever since the statutes of the state of North Dakota has declared for the purity of the home, not going back any further, relations of the kind charged here are not

33 N. D.—35.

proper, and are calculated to injure public morals, and if such you find the fact to be in this case, you should find the defendant guilty if the evidence mounts up to that high position to which I have called your attention.   Upon the other hand, if this explanation you believe puts him within the category of doing what he did there honestly, and not for the purpose of doing wrong, then, even though it may have caused a crowd, you should find him not guilty."

The trouble is with the information.   It does not charge acts or inferences or intent, upon which any part of this instruction could be based.   Yet without a finding of fact, inference, or intent as declared necessary in the instructions, no crime is found to have been committed, but instead that would be left to conjecture as to whether any one of several was actually the one committed, or if any crime was committed.   Defendant is prosecuted under § 10250, Comp. Laws 1913.   It reads: "Every person who wilfully and wrongfully commits any act which grossly injures the person or property of another or which grossly disturbs the public peace or health or which openly outrages public decency and is injurious to public morals, although no punishment is expressly prescribed therefor by this Code, is guilty of a misdemeanor."   The defendant is prosecuted for a nondescript crime, that of openly outraging public decency and injuring public morals.   The statute is intended to cover acts not specifically criminal by other provisions of the Code.   The service of a stallion upon the public streets would be an example as within the plain purview of the statute.   But in a prosecution therefor the acts constituting the crime must be charged, and those acts as charged must answer to the statutory definition, so that proof of the acts establish the commission of a crime.   It is entirely possible for the state to prove every act specified in this information and yet there be no sex relation involved.   Another crime entirely might have been committed; as kidnapping for instance.   Even assuming that in the words of the instruction that in the information "there is foreshadowed a clear violation of sex relation such as ought not to exist between a man married and a woman married" that inference is that another crime, that of adultery, was committed.   And the proof offered in this case would be sufficient to sustain a conviction for adultery, as the jury must have found under the instruction, that this information "foreshadowed a clear violation of sex relation;" that these

persons resorted to this place for adulterous intercourse and of course availed of the ample opportunity of accomplishing that for which they consorted for hours. Had defendant been prosecuted for that crime, instead of upon an information attempting to charge a different crime but not charging any crime except by possible inferences, the act of sex violation would have been specifically charged. There would have been no necessity of inference as to what was charged. And had this information defined the facts as broadly as the inferences given the jury and which they found, the information would probably have been duplicitous as charging adultery as well as the one attempted to be charged.

Again § 10693, Comp. Laws 1913, requires that "the act or omission charged as the offense" be "clearly and distinctly set forth in ordinary and concise language without repetition and in such a manner as to enable a person of common understanding to know what is intended." What acts are this defendant charged with? The answer is being alone with a married woman, not his wife, from 4 until 11 o'clock in the afternoon of a certain day in a building closed to the public, with locked and barred doors and blinded windows. Nowhere in the information is there any charge of sex violation. That remains wholly to inference and conjecture, and so remained until the information was supplemented by the charge of the court that nevertheless a sex violation was inferentially hidden therein. It is highly probable from the proof that there was a sex violation by these parties that day. But if so, another crime was committed than the one for which this defendant was prosecuted. And if the defendant is tried for a sex violation, most certainly he should be charged with it in the information itself. Otherwise, he is as here, charged with one act and tried for and convicted of additional acts. That the trial court was obliged by its instructions to thus supplement the charge contained in the information is sufficient proof that those facts set forth in the information do not constitute in themselves a crime. Had the jury by a special verdict found every fact charged in the information to have been committed by the defendant, no judgment could be pronounced thereon without supplementing them with the inference with which the court in its instruction supplemented the information. In other words, he is not tried for only being and remaining there, but in the

language of the court's instructions, also for "what he did there," as conclusively appears from the following instruction: "Upon the other hand, if this explanation you believe puts him within the category of doing what he did there honestly, and not for any purpose of doing wrong, then even though it may have caused a crowd you should find him not guilty." Plainly the gist of the crime as found by the jury was not only the charge laid in the information, but something not therein charged, viz., "what he did there" behind locked doors.

Then, too, the information is fatally defective from another standpoint under the authority of Gunn v. Territory, 19 Okla. 240, 91 Pac. 861. The defendant did not openly outrage public decency within the meaning in which the words are used in the statute. Oklahoma has our identical statute, word for word. A physician was prosecuted under this statute for what he attempted with his office girl in his office, and the following from that decision has application here:

"Does the indictment charge a public offense? The indictment charges the defendant with openly outraging public decency and committing an act injurious to public morals. The facts pleaded in the indictment do not sustain the charge. If the defendant did the acts charged, he outraged decency and committed an act injurious to morals; but he did not openly outrage public decency and commit an act injurious to public morals. The statute is directed against acts which are committed openly and affect the public. As to whether an act is committed openly is generally a mixed question of law and fact, but it cannot be seriously contended that a doctor's private office is such a place as to give an act committed therein the character of an open act, especially when no one was present except the one against whom the act was committed. . . . By referring to cases which discuss the meaning of the words 'openly' and 'public,' as, for instance, 'open adultery', 'public nuisance' and 'public morals,' etc., one will see that the acts charged against the defendant do not fall within the purview of the statute." And what was there true was equally apparent here. It is difficult to understand how the defendant wilfully openly outraged public decency by sneaking behind closed doors and blinded windows, and there secretly perpetrating the crime that the jury have inferred he committed, i. e., adultery, and have it constitute the crime charged in the information, simply because outsiders observing the two

enter the closed building gathered a mob, and guarded the building and occupants secreted therein from public view, throughout the afternoon and evening. Certainly defendant and his paramour did not intend their acts done in secret should thus attract the rabble. That was the farthest from their intention, accepting at face the inference that they went there for adulterous purposes. Nor is it possible that this could be done openly "in the presence of a large crowd of people" and occur "behind locked and barred doors and blinded windows" as charged in the information.

The defendant has in effect been tried for and convicted of adultery without being charged with it. Under the court's instructions, presumably followed, it was necessary that the jury find defendant and this woman sustained "an improper sex relation;" and while the instructions told the jury that it was not necessary to convict that adultery was committed, yet the jury must find an improper sex relation existed or acquit. It is difficult to understand what the trial court meant other than that the fact of adultery was necessary to be found upon which to base a verdict of guilty, and this, too, in addition to the acts charged in the information. And the same proof was introduced as would have been admissible in a prosecution for adultery on the same record, as, for instance, it was practically established that this man and woman had prior to this time been upstairs together in bed in an adjoining building. This, supposedly for the purpose of showing their adulterous disposition. If, as held in the Oklahoma case under an identical statute, this prosecution is possible only where the acts committed do not constitute a crime otherwise known to the Penal Code, the proof of the commission of adultery establishes that the crime was one other than that charged in the information, and that the prosecution should have been for adultery instead of upon "a blanket statute like the section quoted above." This negatives the right to prosecute for this nondescript crime. It is the theory of the criminal law that any violators thereof shall be prosecuted for the crime they commit and which they know they are committing when doing the acts or permitting the omissions which constitute the crime. While oftentimes the same act may constitute more than one crime, yet such is not applicable under the statute in question, as it is designed to cover only

those acts not otherwise criminal, but which "openly outrage public decency and injure public morals."

No constitutional question raised is necessary to be passed upon, though the statute is assailed in the briefs. The facts contained in the information are insufficient to charge the commission of a crime. And the information on its face shows the acts were not done openly in the sense in which the important modifying term of the statute is used or intended. The demurrer should have been sustained.

If this defendant can be convicted on inferences that are only "foreshadowed" in the information, then a conviction of felony on inferences only thus foreshadowed, and not specifically charged, should be equally proper where the evidence may establish the party guilty of crime, whether of the crime attempted to be charged or a different one. Such would be precedent dangerous to liberty and contrary to constitutional guaranties as well. Every defendant is constitutionally entitled to be informed of what he is to be tried for by a written accusation of facts consisting of his acts or omissions, which must be sufficient in themselves to disclose the commission of a crime. No matter how heinous or revolting the case, nothing less satisfies those requirements of statute imperatively necessary to safeguard the individual and his rights and liberties, can be tolerated or sustained. The invasion of defendant's rights was substantial, not technical. The conviction is ordered set aside.